UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THERESA R. FLANAGAN and DAVID L. PATTERSON,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:15-CV-0222-B** |
| | § | |
| **CHESAPEAKE EXPLORATION, LLC, CHESAPEAKE ENERGY MARKETING, INC. and CHESAPEAKE OPERATING, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Theresa Flanagan and David Patterson seek to amend their claims for breach of the implied duty to reasonably market oil and gas and for declaratory judgment following dismissal under Fed. R. Civ. P. 12(b)(6). The Court, in its Memorandum Opinion and Order issued August 10, 2015, Doc. 13, Mem. Op. & Order (August 10 Order), permitted Plaintiffs to replead their claims to overcome the deficiencies identified in the order. The Court has reviewed Plaintiffs' proposed amended pleadings, and **GRANTS in part** and **DENIES in part** Plaintiffs' Motion to Amend (Doc. 19). The Court **GRANTS LEAVE** to Plaintiffs to amend their claim for breach of the implied duty to reasonably market oil and gas and **DISMISSES with prejudice** their declaratory judgment claim.

**I.**

**BACKGROUND**

This is a class action for underpayment of oil and gas royalties. The August 10 Order recounts the facts in this case in detail. To summarize, Plaintiffs and Chesapeake Exploration entered into oil

and gas leases to pay twenty-five percent (25%) royalties on proceeds computed at an undefined point of sale. Doc. 1, Compl. ¶ 16. Chesapeake Exploration sold gas covered by the leases at the wellhead to its wholly-owned subsidiary Chesapeake Energy Marketing that would then sell the gas on the open market to an unaffiliated purchaser for a much higher price. *Id.* ¶¶ 17–18. From this, Plaintiffs would receive royalty payments on the lower wellhead sales price rather than the higher open-market price. Plaintiffs believed they were entitled to the higher royalties, and that Chesapeake Exploration, Chesapeake Energy Marketing, and Chesapeake Operating (Chesapeake Defendants) had executed sham transactions to improperly minimize their royalty payments. *Id.*

Based on this, Plaintiffs filed a complaint. They brought numerous claims against Chesapeake Defendants, including claims for breach of contract, breach of the implied duty to reasonably market oil and gas, and for declaratory judgment. *Id.* ¶¶ 27–33. The Court's August 10 Order dismissed all of Plaintiffs' claims except for their breach of contract claim, but allowed Plaintiffs to replead their claims for breach of the implied duty to reasonably market oil and gas and for declaratory judgment. Plaintiffs repleaded. Doc. 19-1, Proposed Am. Compl. (Prop. Am. Compl.). Accompanying the repleading was a synopsis explaining how the amendments overcome the grounds stated for dismissal. Doc. 19. Chesapeake Defendants responded asserting that Plaintiffs had not pleaded anything new; rather, they had simply realleged the same causes of action the Court had dismissed. Doc. 22.

## II.

## LEGAL STANDARD

Under Rule 15(a) of the Federal Rules of Civil Procedure, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But this "generous standard is tempered by the necessary power of a district court to manage a case." *Priester v. JP Morgan Chase Bank, N.A.*,

708 F.3d 667, 678 (5th Cir. 2013) (quoting *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). Although Rule 15 indicates a bias in favor of granting leave to amend, leave is by no means automatic. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 318 (5th Cir. 1996) (citing *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). A district court must have a "substantial reason" to deny leave, yet the decision remains within the court's discretion. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)). In its discretion, the court should consider several factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent one of these factors, leave should be freely given. *Id.* (citing *Foman*, 371 U.S. at 182).

## III.

## ANALYSIS

After reviewing the Proposed Amended Complaint, the Court concludes that the futility of amendment factor weighs against granting Plaintiffs leave to amend its declaratory judgment claim.[1]

*A. Futility of Amendment*

It is within the Court's discretion to deny a motion for leave to amend if the amendment

[1] For either repleaded claim, the Court does not find any undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party by virtue of the allowance of the amendment.

would be futile. *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). But if the proposed amendment is not "clearly futile, then denial of leave to amend is improper." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487 (3d ed. 1998). In determining an amended complaint's futility, courts "apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citations omitted). That is, whether the amended complaint states a claim, plausible on its face, upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where the proposed amendment would be subject to the same grounds of dismissal as contained in the defendants' original 12(b)(6) motion, amendment is futile, and denial of the motion to amend is proper. *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007); *DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968) ("Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted."). Thus, the Court must determine whether the Proposed Amended Complaint overcomes the deficiencies of the original complaint and states a plausible claim for breach of the implied duty to reasonably market oil and gas or for declaratory judgment

*B. Breach of the Implied Duty to Reasonably Market Oil and Gas*

Plaintiffs' first amended claim is for breach of the implied duty to reasonably market oil and gas. In Texas, where an oil and gas lease is silent on the subject, courts imply a duty to manage and administer the lease. *Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 373 (Tex. 2001); *Cabot Corp. v. Brown*, 754 S.W.2d 104, 106 (Tex. 1987). This duty includes the "duty to reasonably market the oil and gas produced form the premises," which is two-pronged: (1) "the lessee must market the production with due diligence," and (2) must "obtain the best price reasonably possible." *Cabot Corp*, 754 S.W.2d at 106 (citations omitted). The implied duty to reasonably market oil and gas serves to

protect lessors from lessee self-dealing and negligence. *Occidental Permian Ltd. v. Helen Jones Foundation*, 333 S.W.3d 392, 402–03 (Tex. App.—Amarillo 2001, pet. denied) (citing *Yzaguirre*, 53 S.W.3d at 374). But asserting self-dealing, by itself, is insufficient to plead a breach of duty. *Id.* at 403. To sufficiently plead a breach, the lessor must also allege that different action was required of a reasonably prudent operator under same or similar circumstances. *Id.*

In their Original Complaint, Plaintiffs alleged that Chesapeake Exploration breached the implied duty to reasonably market oil and gas by selling their gas at the wellhead to Chesapeake Energy Marketing rather than at the higher price paid by unaffiliated purchasers downstream of the wellhead. Compl. ¶¶ 16–18, 27. These allegations addressed only the second prong of the two-prong duty: the duty to "obtain the best price reasonably possible." *Cabot Corp*, 754 S.W.2d at 106. Plaintiffs, however, did not allege that Chesapeake Exploration "could have obtained a higher price from another company for the gas at the wellhead." August 10 Order at 14. In its August 10 Order, the Court held that Plaintiffs were required to allege this. *Id.* Otherwise, Plaintiffs had merely asserted self-dealing, which, without more, could not substantiate a breach. For this reason, the Court found that Plaintiffs had failed to state a plausible claim. *Id.*

Key to the Court's determination was where the implied duty applied and for what price the implied duty required Chesapeake Exploration to sell the gas. *Id.* Gas is sold at "the point of sale." *See Potts v. Chesapeake Exploration, L.L.C.*, 760 F.3d 470, 473 (5th Cir. 2014). Lessees must obtain the best price reasonably possible at that point. *Occidental Permian Ltd.*, 333 S.W.3d at 403. In essence, the point of sale is where the price is set, and this is the point where the duty to reasonably market oil and gas, including the duty to obtain the best price reasonably possible, applies. *See Potts*, 760 F.3d at 473; *Occidental Permian Ltd.*, 333 S.W.3d at 403. Plaintiffs' leases direct Chesapeake

Exploration to calculate proceeds at the point of sale (i.e., the wellhead); therefore, its duty was to obtain the best price reasonably possible at the wellhead. Plaintiffs did not allege there was a better price reasonably possible at the wellhead, but that there was a better price reasonably possible downstream of the wellhead. This was insufficient to show a reasonably prudent operator, selling gas at the wellhead, would have acted differently.

In their Proposed Amended Complaint, Plaintiffs again allege that Chesapeake Exploration breached the implied duty by failing to take Plaintiff's gas to a competitive market, but rather sold it at the wellhead. Prop. Am. Compl. ¶ 28. But now they further allege that there is no market at the wellhead, that the market that does exist can be accessed only after the gas is processed, and that had Chesapeake Exploration taken the gas to a competitive market, it could have obtained a higher price, which would have increased Plaintiffs' royalty payments. *Id.* ¶¶ 27–29. Plaintiffs argue that their amended complaint alleges a violation of the first prong of the two-prong duty—the duty to "market the production with due diligence," *Cabot Corp*, 754 S.W.2d at 106—whereas their original complaint alleged only a violation of the second prong.

Chesapeake Defendants respond that this confuses where the implied duty applied and for what price the implied duty required Chesapeake Exploration to sell the gas. Doc. 22, Defs.' Resp. to Mot. to Am. (Defs.' Resp.) 2–3. As explained above, the duty to reasonably market oil and gas applies at the point of sale. Thus, the included duty to market the production with due diligence applies there as well. This, however, presumes an existing market. The Court originally dismissed Plaintiffs' claims because they did not allege that Chesapeake Exploration could have obtained a higher price from another company for the gas at the wellhead. August 10 Order at 14. By requiring this additional pleading, the Court was requiring Plaintiffs' to plead something more than mere self-

dealing. It was requiring that Plaintiffs plead that a reasonably prudent operator would have taken a different action under same or similar circumstances (i.e., would have sold the gas for a higher price to a non-affiliate).

Plaintiffs repleaded that there was no market at the wellhead, and that the market that does exist can be accessed only after the gas is processed. Prop. Am. Compl. ¶ 28. For purposes of deciding a 12(b)(6) motion to dismiss, the Court must take Plaintiffs' statements as true. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). Taken as true, these statements demonstrate more than mere self-dealing because a reasonably prudent operator would have taken the gas to market rather than sell to an affiliate. Thus, the duty to market the production with due diligence would have been implicated and possibly violated at the point of sale (the wellhead).[2] Therefore, Plaintiffs' Proposed Amended Complaint would not be subject to the same grounds of dismissal as contained in Chesapeake Defendants' original 12(b)(6) motion, and amendment would not be futile.

C. *Declaratory Judgment*

Plaintiffs' second amended claim is for declaratory judgment under both federal and Texas law. Federal law applies.[3] The Court has broad discretion in determining whether to entertain a

[2] Despite Defendants' contentions, Plaintiffs' repleadings that Chesapeake Exploration sold the gas at the wellhead to Chesapeake Energy Marketing and that there is no market at the wellhead do not invalidate each other. Defs.' Resp. 7. For there to be a market, there must be more than isolated sales or a market dominated by a few producers and purchasers; a market must be open and competitive. Eugene O. Kuntz, *Law of Oil & Gas* § 40.4(d). This means Plaintiffs could consistently claim a self-dealing transaction occurred where there was no market.

[3] The Fifth Circuit has consistently interpreted the Texas Declaratory Judgments Act as a procedural statute that is inapplicable to declaratory judgment actions in federal court. *See Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006); *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). As such, federal courts apply federal procedural rules. *Rhodes v. Prince*, No. 05-CV-2343, 2006 WL 954023, at *4 (N.D. Tex. Apr. 11, 2006) *aff'd sub nom. Rhodes v. City of Arlington*, 215 F. App'x 329 (5th Cir. 2007). Thus, the Court must consider Plaintiffs' claim for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. *Id.*

declaratory judgment action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. *Winton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (noting that the Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant"). Although a court may not dismiss a request for declaratory relief "on the basis of whim or personal disinclination . . . the court may consider a variety of factors in determining whether to decide a declaratory judgment suit." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989). For example, if a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted. *See Pan-Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980) (affirming refusal to allow leave to add claims that were adequately raised in the original complaint).

In the Federal Rule of Civil Procedure 12(b)(6) context, courts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit. *See, e.g., Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 07-CV-1799, 2008 WL 2434245, at *3 (N.D. Tex. June 17, 2008) (dismissing declaratory judgment claim as entirely repetitive and unnecessary); *Xtria LLC v. Tracking Sys., Inc.*, No. 07-CV-0160, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (dismissing declaratory judgment action under Rule 12(b)(6) where it duplicated an existing breach of contract claim); *Assistmed, Inc. v. Conceptual Health Solutions, Inc.*, No. 05-CV-0880, 2006 WL 3691003, at *17 (N.D. Tex. Dec. 14, 2006) (same); *Albritton Props. v. Am. Empire Surplus Lines*, No. 04-CV-2531, 2005 WL 975423, at *2 (N.D. Tex. Apr. 25, 2005) (granting Rule 12(b)(6) motion dismissing counterclaim for declaratory judgment where the disputed issues were already pending before the court); *Kogul v. Xspediou Mgmt. Co.*, No. 04-CV-2518, 2005 WL 1421446, at * 4 (N.D. Tex. June 1, 2005) (dismissing declaratory actions that sought resolution of matters already to be resolved in the ongoing lawsuit).

In their Original Complaint, Plaintiffs sought a declaration as to how their royalties should be calculated. Compl ¶ 33. In its August 10 Order, the Court held that this was precisely what it must determine to resolve the breach of contract claim. August 10 Order at 19. In their Proposed Amended Complaint, Plaintiffs allege that Chesapeake Exploration has an ongoing duty to calculate Plaintiffs' royalties that will extend beyond the judgment. Prop. Am. Compl. ¶ 33. They argue that the ongoing duty would require them to periodically file to request a money judgment, and that declaratory judgment would more appropriately shape Chesapeake Defendants' future obligations. Doc. 19, Mot. to Am. ¶¶ 11–12 (citing *5436, LLC v. CBS Corp.*, No. CIV.A. H-08-3097, 2009 WL 3378379, at *16 (S.D. Tex. Oct. 16, 2009); *Trammell Crow Residential Co. v. Va. Surety Co., Inc.*, 643 F. Supp. 2d 844, 856 & n.15 (N.D. Tex. 2008); *Perido Sun Condominium Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, No. 3:06cv318/MCR, 2007 WL 2565990, at *4 (N.D. Fla. Aug. 30, 2007); *Halliburton Energy Servs. v. Axis Techs., LLC*, 444 S.W.3d 251, 262 (Tex. App.—Dallas 2014, no pet.)).

Defendants respond that the cases Plaintiffs cite dealt with declaratory judgments where the issue did not duplicate the claims for breach of contract. Defs.' Resp. 9. The Court is inclined to agree with Defendants. Claims for declaratory judgment were allowed in those cases because something more than the claims for breach of contract was at stake. The purpose of a declaratory judgment in this case would be to afford relief from future uncertainty regarding Plaintiffs' legal rights to higher royalty payments. *See Halliburton Energy Servs.*, 444 S.W.3d at 262–63. Resolving the breach of contract claim would resolve any future uncertainty. *See Regus Mgmt. Grp., LLC*, 2008 WL 2434245, at *3. Any determination concerning royalty obligations will have res judicata effect and will determine future rights and obligations. Thus, the Court concludes that Plaintiffs' declaratory judgment claim would be subject to the same grounds of dismissal as contained in Chesapeake

Defendants' original 12(b)(6) motion. Therefore, the amendment is futile.

## IV.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion to Amend (Doc. 19). The Court **GRANTS LEAVE** to Plaintiffs to amend their claim for breach of the implied duty to reasonably market oil and gas and **DISMISSES with prejudice** Plaintiffs' declaratory judgment claim.

**SO ORDERED.**

**SIGNED: November 4, 2015**.

**JANE J. BOYLE**
**UNITED STATES DISTRICT JUDGE**